UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REESE VOLL,<br><br>                    Plaintiff,<br><br>          v.<br><br>HCL TECHNOLOGIES LIMITED, et al.,<br><br>                    Defendants. | Case No. 18-CV-04943-LHK<br><br>**ORDER GRANTING HCL'S MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 12 |

Plaintiff Reese Voll ("Plaintiff") brings a putative class action against Defendants HCL Technologies Limited and HCL America, Inc. (collectively, "HCL") for employment discrimination on the basis of race. Before the Court is HCL's motion to compel arbitration. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS HCL's motion to compel arbitration.

## I.      BACKGROUND

### A. Factual Background

#### 1. Plaintiff's Employment at HCL

Plaintiff, who is white, is a resident of Texas. ECF No. 1 ("Compl."), ¶ 3. Defendant HCL Technologies is an information technology ("IT") company with its global headquarters in Noida,

India and domestic headquarters in Sunnyvale, California. *Id.* ¶ 4. Defendant HCL America is a subsidiary of HCL Technologies with its headquarters in Sunnyvale. *Id.* ¶ 5.

In the United States, "HCL contracts with U.S. companies to provide IT-related services." *Id.* ¶ 11. HCL secures contracts with companies and then "hires individuals to fill positions to service the client." *Id.* After such a position ends, those employees "are placed in an unallocated status." *Id.* From that status, "individuals must again seek new positions within HCL, going through an application and interview process, just as external applicants must." *Id.* According to Plaintiff, HCL has a policy of terminating employees who are in an unallocated status for over four weeks. *Id.* ¶ 18.

Plaintiff, who has over 25 years of experience in information technology, began working for HCL in November 2014. *Id.* ¶ 20. HCL hired Plaintiff for its "internal Solution Architecture Practice S.W.A.T. Team." *Id.* ¶ 21. Plaintiff's team's role was to "transition and transform the IT infrastructure of HCL clients and to resolve issues faced by those accounts." *Id.* Plaintiff worked specifically with HCL client PepsiCo and "was responsible for resolving infrastructure-related issues for PepsiCo as it transitioned from twelve to five global data centers." *Id.*

Plaintiff alleges that he faced a hostile work environment during his tenure at HCL. *Id.* ¶ 25. Among other things, when Plaintiff started on the PepsiCo account and asked his South Asian colleagues on the transition team for information, the colleagues failed to respond. *Id.* When Plaintiff "escalated his concerns," Plaintiff's supervisor "chastised" Plaintiff. *Id.*

In July 2016, Plaintiff's supervisor, who was South Asian, informed Plaintiff that he was being removed from his position servicing PepsiCo and placed into unallocated status. *Id.* ¶ 27. Plaintiff's supervisor told Plaintiff to contact HCL's human resources department "to locate his next project." *Id.* Plaintiff contacted human resources, which referred Plaintiff to two open positions with HCL. *Id.* ¶ 28. Plaintiff applied to those positions, as well as HCL positions available online, but "Plaintiff was never invited for an interview by HCL." *Id.* Plaintiff "reached out to HCL for updates regarding his employment," but never received a position. *Id.* Then, on August 26, 2016, after Plaintiff had been in an unallocated status for approximately a month, HCL

terminated Plaintiff. *Id.* ¶ 29.

Later in 2016, Plaintiff continued to apply to open HCL positions. *Id.* ¶ 30. On a couple occasions, Plaintiff was contacted by an HCL "Talent Supply Chain" employee. *Id.* However, Plaintiff did not receive any interviews at HCL in 2016. *Id.* In 2017, Plaintiff applied for "at least three positions" at HCL, but HCL did not respond to Plaintiff's applications. *Id.* at ¶ 31. Throughout 2018, Plaintiff applied to multiple positions at HCL, and although HCL interviewed Plaintiff for one position, Plaintiff was never hired. *Id.* at ¶¶ 32–35.

Plaintiff alleges that HCL discriminates against "individuals who are not South Asian in hiring, promotion, and termination decisions." *Id.* ¶ 12. For example, Plaintiff alleges that HCL shows a preference for South Asian individuals on H-1B visas and that "non-South Asian individuals are often displaced from their current positions in favor of South Asian and visa-ready individuals." *Id.* ¶ 15. That practice, according to Plaintiff, leads to HCL's disproportionate termination of non-South Asian individuals. *Id.* ¶ 18.

### 2. Arbitration Agreement

In 2015, HCL amended its dispute resolution agreement, which includes an arbitration clause. ECF No. 12-3, Declaration of Prasath Panneerselvam ("Panneerselvam Decl.), ¶ 4. On December 1, 2015, HCL sent the amended agreement to all employees, including Plaintiff, via email. *Id.* ¶¶ 3, 5. In the email, HCL informed recipients that "HCL America has modified the Dispute Resolution Agreement (also known as the Arbitration Agreement) applicable to both the company and to all employees." ECF No. 12-2, Declaration of Jayanathan Thangamoni ("Thangamoni Decl."), Ex. A. The email informed recipients that the dispute resolution agreement was attached to the email. *Id.* The email also included a paragraph on opt-out procedures, which began with the bold, underlined text "Procedure to Opt Out." *Id.* The opt-out paragraph informed recipients that if an employee wished to opt out of the dispute resolution agreement, the employee must do so by January 5, 2016 by requesting and completing an opt-out form. *Id.*

On December 1, 2015, when HCL distributed the revised dispute resolution agreement to

its employees, Plaintiff was employed with HCL and had an @hcl.com email address. ECF No. 12-1, Declaration of Atul Jain ("Jain Decl."), ¶ 5. HCL retrieved the December 1, 2015 email attaching the dispute resolution agreement from Plaintiff's email account. Thangamoni Decl. ¶ 4, Ex. A. Although HCL has records of those employees who opted out, there is no record of Plaintiff opting out. Jain Decl., ¶ 7. For his part, Plaintiff declares that he does not recall receiving "the December 1, 2015 email from hclahrspeak@hcl.com, nor the Amended Dispute Resolution Agreement attached to that email." ECF No. 13-1, Declaration of Reese Voll ("Voll Decl."), ¶ 3. Plaintiff declares that because he no longer has access to his HCL email account, he "cannot confirm at this time whether [he] received the December 1, 2015 email and the amended arbitration agreement." *Id.* ¶ 4. Lastly, Plaintiff declares that had he "viewed" the agreement, he would have opted out. *Id.* ¶ 6.

HCL's revised dispute resolution agreement, as amended December 1, 2015, sets forth procedures for arbitration of certain disputes. Thangamoni Decl., Ex. A ("Arbitration Agreement"). For example, the Arbitration Agreement provides:

> By this Agreement, both HCL America Inc. and all its related entities ("the Company") and you agree to resolve any and all claims, disputes or controversies arising out of or relating to your application for employment, your employment with the Company, and/or the termination of your employment exclusively by final and binding arbitration.

*Id.* In the "Covered Claims" paragraph, the Arbitration Agreement provides:

> "[s]ome, but not all, of the types of claims covered are: . . . *discrimination or harassment on the basis of race*, sex, age, national origin, religion, disability or any other unlawful basis . . . wrongful discharge . . . and claims arising under any statutes or regulations applicable to applicants, to employees, or to the employment relationship."

*Id.* (emphasis added). The Arbitration Agreement further provides: "All claims covered by this Agreement are intended to be brought and resolved on an individual basis. Both you and the Company are waiving any right to bring claims as class, collective, or representative actions." *Id.*

## B. Procedural History

On August 15, 2018, Plaintiff filed the instant putative class action against HCL. Compl.

Plaintiff seeks to represent the following class:

> All individuals who are not of South Asian race who applied for positions with (or within) HCL in the U.S. and were not hired, who were employed by HCL in the U.S. and sought a promotion but were not promoted, and/or who were employed by HCL in the U.S. and were involuntarily terminated.

*Id.* ¶ 36.

Plaintiff brings a single cause of action for employment discrimination on the basis of race under 42 U.S.C. § 1981, the Civil Rights Act of 1866. *Id.* ¶¶ 45–49.

On September 5, 2018, HCL filed a motion to compel arbitration. ECF No. 12 ("Mot."). On September 19, 2018, Plaintiff filed an opposition. ECF No. 13 ("Opp."). On September 26, 2018, HCL filed its reply. ECF No. 16 ("Reply").

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

Interpretation of arbitration agreements generally turns on state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). However, the United States Supreme Court has stated that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The FAA creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–79 (1989) ("[T]he FAA must be resolved with a healthy regard for the federal policy favoring arbitration."). However, "state law is not entirely displaced from federal arbitration analysis." *Ticknor v. Choice*

*Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001).

In deciding whether a dispute is arbitrable under federal law, a court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts generally should apply ordinary state-law principles governing contract formation in deciding whether [an arbitration] agreement exists."). Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi*, 473 U.S. at 626. If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

However, the FAA's savings clause "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2). "The clause 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (internal quotation marks omitted).

## III. DISCUSSION

HCL moves the Court to compel arbitration and stay the lawsuit under the FAA or, in the

alternative, to dismiss Plaintiff's claims for improper venue under Federal Rule of Civil Procedure 12(b)(3). Because the Court grants HCL's motion to compel arbitration, the Court does not reach HCL's venue argument.

When a party moves to compel arbitration, the Court undertakes a three-step inquiry. First, the Court addresses whether the contract at issue affects interstate commerce, such that the FAA applies. *Circuit City*, 532 U.S. at 119. Second, the Court addresses whether the parties agreed to arbitrate. *Brennan*, 796 F.3d at 1130. Third, the Court addresses whether the agreement to arbitrate encompasses the claims at issue in the lawsuit. *Id.* Here, Plaintiff does not contest that his employment contract with HCL affected interstate commerce, as HCL America maintains its principal place of business in California and Plaintiff is a resident of Texas. Compl. ¶¶ 3, 5. Nor does Plaintiff contest that if the Arbitration Agreement is a valid agreement to arbitrate, the Agreement encompasses Plaintiff's claim for race discrimination. *See* Arbitration Agreement (listing, among covered claims, "discrimination or harassment on the basis of race").

Plaintiff's argument focuses only on the second step of the inquiry: whether the Arbitration Agreement is a valid agreement to arbitrate. Plaintiff does not even directly contend that the Arbitration Agreement was not a valid agreement to arbitrate. Rather, Plaintiff contends that Plaintiff's declaration establishes a material dispute about the existence of an agreement, which Plaintiff contends requires the Court to deny HCL's motion to compel and instead permit "limited discovery on the threshold issue of whether an agreement to arbitrate was formed." Opp. at 1.

### A. Whether A Valid Agreement to Arbitrate Exists

As explained, having concluded that the FAA applies, the Court must address whether Plaintiff and HCL in fact entered into an agreement to arbitrate. *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (holding that "challenges to the very existence of a contract are, in general, properly directed to the court" rather than the arbitrator); *see also Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (same). The FAA permits the Court to order discovery to resolve whether a contract exists "only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v.*

7

*Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4). Plaintiff's mere assertion that a factual dispute exists is insufficient to require discovery. The Ninth Circuit has held that the party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Sanford*, 483 F.3d at 964 (instructing district court, on remand, to determine "whether a contract was formed"). As such, only in narrow circumstances not applicable here have courts ordered additional discovery on the existence of an agreement to arbitrate. *See, e.g.*, *Myrvold v. Raibow Fiberglass & Boat Repair, LLC*, 2018 WL 1748107, at *1–3 (D. Alaska Apr. 11, 2018) (ordering additional discovery where defendant attached to motion to compel only an example of repair agreements defendant provided to clients, rather than the actual repair agreement between defendant and plaintiff).

To determine whether an agreement to arbitrate exists, the Court must apply "ordinary state-law principles that govern the formation of contracts." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options*, 514 U.S. at 944). The Ninth Circuit has held, applying California law, that an employer's transmission of an arbitration agreement to an employee and the employee's choice not to opt out create an arbitration agreement that binds the parties. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (holding that an employee's failure to affirmatively opt out rendered her "bound by the terms of the arbitration agreement"). Specifically, under California law, "[i]t is settled that an employer may unilaterally alter the terms of an employment agreement," and that an employee's continued employment constitutes acceptance of those new terms. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (alteration in original) (quoting *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 620 (Cal. 2009)); *see also Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421–22 (2000) (holding that the employee's presumed acceptance of new terms may be rebutted by the employee's denial, but that a court is then entitled to weigh the "conflicting evidence" and make factual findings about existence of an agreement).

Here, HCL has attached to its motion to compel evidence that (1) HCL sent all employees

the Arbitration Agreement via email on December 1, 2015, Panneerselvam Decl. ¶¶ 3–5 ; (2) both the email and the Arbitration Agreement included a clear explanation of how an employee could opt out, Thangamoni Decl., Ex. A; (3) the email was in Plaintiff's HCL email account, *id.* ¶ 4; (4) Plaintiff sent an email from that account the next day, December 2, 2015, *id.* ¶ 5, Ex. B; and (5) Plaintiff did not in fact opt out, Jain Decl. ¶ 5. In opposition, Plaintiff declares only that he "cannot recall receiving" the December 1, 2015 email and Arbitration Agreement and "cannot confirm" whether he received the email without access to his HCL email account. Voll Decl. ¶¶ 3–4. Thus, Plaintiff appears to request discovery into his HCL email account. Opp. at 1, 5; *see Hibler v. BCI Coca-Cola Bottling Co. of L.A.*, 2011 WL 4102224, at *1 (S.D. Cal. Sept. 14, 2011) ("A plaintiff can support his request for discovery by suggesting what evidence he expects to derive from discovery and by suggesting circumstances that may raise doubt as to the formation of the agreement.").

However, Plaintiff's proposed additional discovery would not yield new evidence. Plaintiff proposes discovery of his HCL email account, but Plaintiff does not attack the credibility of HCL's declaration that HCL retrieved the December 1, 2015 email from Plaintiff's HCL email account. Thus, HCL has already completed what Plaintiff proposes. Under California contract law, that declaration and HCL's declaration that HCL distributed the Arbitration Agreement to all employees, including Plaintiff, support the conclusion that Plaintiff in fact received the December 1, 2015 email. *See Craig*, 84 Cal. App. 4th at 422 (explaining that a court may weigh competing evidence to determine whether the plaintiff received the document in question). HCL's corporate policies that all employees receive "a corporate e-mail account" from HCL and that "[e]very employee should check his/her e-mail several times throughout the day" further support such an inference. Jain Decl., Ex. A at 28 (HCL Employee Handbook).

Plaintiff's lack of memory as to whether he "recalls" receiving the December 1, 2015 email and Arbitration Agreement, Voll Decl. ¶ 3, does not even directly contradict HCL's evidence that Plaintiff in fact received the email. Under these circumstances, no material facts are in dispute, and the Court is not faced with a situation where additional discovery on the existence

9

of an agreement to arbitrate is warranted. *See Hesse v. Sprint Spectrum, L.P.*, 2012 WL 37399, at *2–4 (W.D. Wash. Jan. 9, 2012) (in case where defendant moved to compel arbitration over five years into the lawsuit and after close of fact discovery, granting discovery limited to whether agreement to arbitrate was unconscionable).

Plaintiff suggests that HCL's email notification of the Arbitration Agreement provided insufficient notice, but Plaintiff's cases are inapposite. *See Knutson*, 771 F.3d at 565 (addressing notice to car purchaser who received no documents); *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 554–55 (1st Cir. 2005) (addressing arbitration clause's appropriateness under the Americans with Disabilities Act ("ADA"), which has unique requirements). Unlike *Knutson*, who received no documents, Plaintiff in the instant case received notice of the Arbitration Agreement in the December 1, 2015 email and the attached Arbitration Agreement. Unlike *Campbell*, Plaintiff in the instant case has not asserted an ADA claim; therefore, the requirements of that statute do not apply.

California law clearly contemplates that only "reasonable and fair notice" is required to advise an employee of new employment terms, which courts have held does not even require that an employer inform an employee that continued employment constitutes acceptance. *Davis*, 755 F.3d at 1094 (citing *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 708 (2013)). Here, HCL provided notice that exceeds the "reasonable and fair" standard, as HCL has demonstrated by a preponderance of the evidence that Plaintiff received the December 1, 2015 email and Arbitration Agreement, both of which informed Plaintiff of his right to opt out. HCL has also demonstrated that Plaintiff failed to opt out. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (concluding, in case involving California law, that "the circumstances of this case permit us to infer that [the employee] assented to the [revised arbitration agreement] by failing to exercise his right to opt out of the program").

Further, as Plaintiff does not dispute, the Arbitration Agreement clearly encompasses Plaintiff's claim for employment discrimination on the basis of race. Compl. ¶¶ 45–49. The Arbitration Agreement covers claims for "discrimination or harassment on the basis of race . . .

and claims arising under any statutes or regulations applicable to applicants, to employees, or to the employment relationship." Thangamoni Decl., Ex. A.

Therefore, the Court must grant HCL's motion to compel arbitration of Plaintiff's claim and will stay the lawsuit pursuant to 9 U.S.C. § 3. *See Johnmohammadi*, 755 F.3d at 1074 (holding that "a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration").

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS HCL's motion to compel arbitration and stay the lawsuit. The parties shall notify the Court within seven days of an arbitration ruling.

The Clerk shall administratively close the case file. This is an internal administrative procedure that does not affect the rights of the parties.

**IT IS SO ORDERED.**

Dated: January 9, 2019

_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California